Johnson, J.
I. The act of March 14, 1850 (2 Curwen, 1659), under which these bonds were issued and sold, reads as follows :
“Sec. 1. — That the parties to any bond, bill, promissory note, or other instrument of writing, for the payment or forbearance of money, may stipulate therein for interest receivable upon the amount of such bond, bill, note, or other instrument, at any rate not exceeding ten per centum yearly.
“Sec. 2. — That upon all judgments or decrees rendered upon any bond, bill, or promissory note, or other instrument aforesaid, interest shall be computed until payment at the rate specified in such bond, bill, note, or other instrument, not exceeding ten per centum, as aforesaid, or in case no rate of interest be specified, at six per centum yearly.”
Chatfield and Woods purchased these bonds with the interest warrants or coupons detached. These coupons related to the semi-annual installments of interest, payable before the bonds became due. As these were never owned by Chat-field and Woods, they were entitled to interest on the bonds they owned after they matured — i. e., after February 1, 1869. The question is, at what rate? — is it the legal rate, as where there is no stipulation for a greater rate not exceeding ten per cent., or is it for the greater rate ?
Assuming that these bonds are silent as to the rate of interest they shall bear, after maturity, if they contain a stipulation for ten per cent, before maturity, then the principal, after maturity until judgment, and the judgment rendered thereon, will bear ten per cent, interest. Monett v. Sturges, 25 Ohio St. 384; Marietta Iron Works v. Lottimer, 25 Ohio St. 681.
These decisions rest upon the terms of the act of 1850. It is true they are not in harmony with the construction placed upon certain statutes by the supreme court of the United States. In the latest of these, Holden v. Trust Co., 100 U. S. 72, which ai’ose under the law in force in the District of Columbia, after citing the cases where that court has held, that when the instrument contains no stipulation as to the rate *578 after maturity, the legal rate governs, it is said: “ Where a different rule has been established, it governs, of course, in that locality. The question is always one of local law.”
The rule adopted in these cases is: that when the agreement extends no farther than to the time fixed for the payment of the principal, then, upon default of payment, the legal rate of interest is allowed as damages. It is said, that if the parties intended a higher rate after due, it would have been easy to say so.
In Monett v. Sturges, it was held, under the act of 1850, that a note payable at a future day, “ with interest from date at ten per cent.,” carried the agreed rate, after due, as well as during the time before due. The same rule was adhered to in Marietta Iron Works v. Lottimer, 25 Ohio St. 621, under the eight per cent, law of 1869.
In Samyn v. Phillips, 15 Ohio St. 218, there was a loan of money, payable at a future day, to bear interest at ten per cent., payable quarterly; and separate notes were taken — one for the principal due at the time agreed on, and sundry interest notes for the interest accruing up to maturity of the loan; but there was no stipulation in either of the notes, for any rate of interest before or after the maturity of the debt. It was held, that, as there was no stipulation as to the special rate of interest contained in the notes, interest could only be computed after maturity at six per cent.
In view of the foregoing decisions, the question here presented is, do these bonds contain a stipulation for ten per cent.? If they do, that rate governs, although the bond is silent as to the rate after due. It is not necessary that this stipulation should, in terms, apply after due, if it is expressly agreed in the instrument that up to maturity it bears a higher rate, not exceeding ten per cent. That stipulation is sufficient to carry the same rate until paid. These bonds, in express terms, contain two stipulations — 1st. “ To pay the holder, on the first of February, 1869, $500 ;” 2d. “And also interest thereon at the rate of ten per cent, per annum, semi-annually, on the first August and February ensuing the date hereof, until the prin *579 cipal sum shall be paid on the presentation of the annexed interest warrants.” Here is an express promise to pay interest before the bonds become due at the special rate.
The manner in which this interest is to be paid — that is, on presentation of the annexed interest warrants, does not eliminate this express promise as to the rate from the body of the bond. These bonds contain a stipulation of the higher rate,
“ until the principal sum be paid on the presentation of the annexed interest warrants at their said office.” Some of /us think this is a stipulation for the payment of the higher rate after maturity; but, assuming that this is not so, still it cannot be denied that it is, at least, a clear and distinct stipulation in the bond that, up to the time the principal sum becomes due, the company agrees to pay interest at ten per cent, per annum, payable semi-annually. The promisor used this language relating to interest on the assumption that the principal would be paid at maturity; hence the stipulation as to the higher rate in terms related only to the same period, and the words, “ on the presentation of the annexed interest warrants,” related to the steps to be taken, by the holder of the interest warrants, to collect this semi-annual interest, accruing before due. There being a stipulation in the bond for the special rate of interest before due, the principal sum bears a like rate after due, according to holding of this court in 25 Ohio St. supra.
We are, however, asked to review and reverse the decisions of this court in Monett v. Sturges and Marietta Iron Works v. Lottimer, on the ground that Mueller v. McGregor, 28 Ohio St. 265, is said to have held differently, and to have followed the cases decided by the supreme court of the United States on this point. This is a misapprehension, which is apparent from a statement of facts in that case. There, Fortman, a mortgagor, sold real estate to Mueller & Grogreve, they assuming to pay certain notes to Dunlop, secured by mortgage, all of which were due September 1, 1855, and amounted, at that date, with unpaid interest, to $11,340.05. In consideration of an extension of time, by the mortgagee, until September 1, 1856, the purchasers agreed, in writing, with Dunlop and Fortman, by a tripartite agreement, that they would pay interest on the *580 amount due ($11,340.05) for that year at ten per cent., semiannually, and gave their two notes to Dunlop for the ámount of such interest. These notes were afterwards paid. It was expressly agreed that, on payment of these interest notes for that year, these would be due on the mortgage notes, at the end of the extended time, said sum of $11,340.05, a/nd no more. The question was, did the debt, after September 1, 1856, bear six or ten per cent.? If the face of the notes, held by Dunlop, was to determine the rate, then only six per cent, could be charged ; but if the tripartite contract for forbearance, made by Mueller & Grogreve for the year ending September 1, •1856, operated as an agreement for the forbearance generally, then the principal would bear the higher rate after that date.
The construction placed upon this tripartite agreement was that, though a separate instrument from the notes and mortgage, it was valid but for one year only; and that, after the expiration of that year, the only stipulation as to interest was that contained in the notes themselves. The case turned on the construction of the tripartite agreement, and it was held, according to its manifest meaning, to be limited to the extended time and no longer; and that it did not change the obligation of the notes after that time, from Rix to ten per cent. Mueller and Grogreve had fully performed their special contract to pay ten per cent, for that year, and their further obligation rested upon their prior agreement to pay the notes, which contained no stipulation as to a rate of interest.
II. The second error assigned is that the court erred in allowing six per cent, interest due on the semi-annual installments of interest falling due after maturity of the bonds.
This error is not apparent on the record. The judgment entry seems to imply that such interest was allowed, but whether it was so in fact, depends upon a question of fact not disclosed.
On September 26, 1877, the court ordered the receiver in charge to pay the plaintiffs below $7,000 on their claim, but whether it was in fact paid before final judgment, the record is silent. On February 15, 1878, final judgment was rendered finding for the plaintiff $40,273.87, after crediting all payments thereof}, including such as have been made since the commence *581 ment of this action. Whether this $7,000 was among tñese credits, we cannot assume.
The answer, which was filed September 26, 1877, made no claim for credits other than those stated in the petition. We are, therefore, not called on decide the question raised by this assignment, and express no opinion on the proper construction of these bonds in that respect.

Judgment affirmed.